IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OPEN TEXT CORPORATION,

    Plaintiff,

v.

STEVEN GRIMES, et al.,

    Defendants.

Civil Action No.: RDB-17-1248

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Open Text Corporation brings this action against its former employee, defendant Steven Grimes, and Grimes' new employer, defendant Nuxeo Corporation, seeking injunctive and monetary relief based on defendants' alleged violations of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836-39, *et seq.*, the Maryland Uniform Trade Secrets Act, Md. Com. Law § 11-1201, *et seq.*, and several common law causes of action. (ECF No. 1.) The gravamen of Open Text's Complaint is that Grimes wrongfully downloaded thousands of Open Text computer files containing the company's confidential and proprietary trade secrets; that Grimes transferred these files to his new employer, Nuxeo, a direct competitor of Open Text; that Nuxeo has used Open Text's proprietary data to solicit Open Text's clients; that Grimes and Nuxeo have improperly solicited Open Text employees to leave that company and begin working for Nuxeo; and that Open Text already has lost clients, business opportunities, and revenue as a result of these actions. (*Id.*) *See also* ECF Nos. 8, 10, 32.

Now pending before this Court is defendants Steven Grimes and Nuxeo Corporation's Motion to Dismiss the Complaint or, in the Alternative, to Stay Any Claim Not Dismissed ("Defendants' Motion"). (ECF No. 31.) Defendants' Motion, framed under Rule 12(b)(6), is premised on their view that this Court is *forum non coveniens* based on a forum selection clause contained in Grimes' "Employee Confidentiality, Non-Solicitation, and Invention Assignment Agreement" with Open Text. (ECF No. 31-2.) This Court has already held Motions Hearings on May 11, 2017 and June 7, 2017, as more fully discussed, *infra*. This Court has reviewed the parties' submissions, and no additional hearing on the subject Motion to Dismiss is necessary. For the reasons stated below, Defendants' Motion (ECF No. 31) is DENIED.

Plaintiff's pending Motion for Temporary Restraining Order or, in the Alternative, for Preliminary Injunction ("Motion for TRO/PI") (ECF No. 8) will be addressed promptly, and a Scheduling Order will be issued in this case.[1]

## BACKGROUND

**I.     Open Text's Complaint and Preliminary Motions**

On May 5, 2017, plaintiff Open Text Corporation filed a ten count Complaint against its former employee, Steven Grimes, and Grimes' new employer, Nuxeo Corporation, alleging, *inter alia*, violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-39 *et seq.*, violations of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Com. Law § 11-1201, *et seq.*, breach of contract, and breach of fiduciary duty. (ECF No. 1.)

---

[1] As set forth in detail herein, this Court already has conducted a hearing on plaintiff's Motion for TRO/PI (ECF No. 8) and, while holding the Motion in abeyance, encouraged the parties to take measures to prevent the alleged imminent harm to Open Text, which they did, as discussed further, *infra*. *See* ECF Nos. 20, 40, 44.

Plaintiff Open Text Corporation ("plaintiff" or "Open Text") is a Canadian corporation with principal place of business in Waterloo, Ontario, Canada. (ECF No. 1 at ¶ 7.) Open Text is a software company specializing in enterprise information management ("EIM"), Digital Asset Management ("DAM"), and consulting services, and works with an array of businesses and organizations around the world. (*Id.*) Plaintiff employs over 3,300 American workers and maintains over thirty offices in the United States, including one located in Gaithersburg, Maryland. (ECF No. 41 at 9, 29-30.)

Defendant Nuxeo Corporation ("defendant" or "Nuxeo") is a Delaware corporation with principal place of business in Brooklyn, New York. (ECF No. 1 at ¶ 9.) Nuxeo is a software company specializing in the provision of enterprise content management ("ECM") platforms and solutions for organizations around the world. (*Id.* at ¶ 10.) Nuxeo is a direct competitor of Open Text. (*Id.*)

Defendant Steven Grimes ("defendant" or "Grimes") is a former employee of Open Text who resides in Clarksville, Maryland. (ECF No. 1 at ¶ 11.) Until March 31, 2017, Grimes worked for Open Text out of his home office and at the company's Gaithersburg, Maryland office. (*Id.* at ¶ 92; ECF No. 41 at 10.) Grimes' relationship with Open Text dates to 1999, when he was employed by corporations which Open Text subsequently acquired. (*Id.* at ¶¶ 66-67.) Shortly after Grimes began working for Open Text itself, on September 7, 2004, he executed an "Employee Confidentiality, Non-Solicitation and Invention Assignment Agreement – Development" (the "Grimes Agreement") with Open Text. (*Id.* at ¶ 68.) A copy of the Agreement is attached to the Complaint. (ECF No. 1-2.) The Agreement provided, inter alia, that Grimes would "keep confidential and hold in secrecy"

3

Open Text's confidential information for a period of three years following the end of his employment; that he would not publish or share any confidential information; and that he would not solicit or attempt to solicit other employees to leave Open Text for a period of six months following his termination. (ECF No. 1 at ¶ 69-71.) The Agreement also contains a forum selection clause ("FSC") which provides that:

> "This agreement and all the rights and obligations arising herefrom shall be interpreted and applied in accordance with the laws of the Province of Ontario and in the courts of the Province of Ontario there shall be exclusive jurisdiction to determine all disputes relating to this Agreement and all the rights and obligations created thereby. I hereby irrevocably attorn to the jurisdiction of the courts of the Province of Ontario."

(Grimes Agreement § V(D), ECF No. 1-2 at 4.)

During the over twelve years that Grimes worked for Open Text, he was promoted, most recently, in September 2015, to the position of Vice President, Solutions Consulting, Americas. (ECF No. 1 at ¶ 73.) In this role, Grimes led Open Text's North America Solutions Consulting Presales Team and had access to Open Text's Confidential Information and Trade Secrets, as well as Open Text's Salesforce customer database. (*Id.* at ¶¶ 74-77.)

As alleged in the Complaint, the actions giving rise to the instant case began on March 20, 2017, when Grimes sent an email announcing his resignation from Open Text, with his last date of work to be March 31, 2017.[2] (ECF No. 1 at ¶ 83.) Grimes sent his resignation letter at 4:22 p.m. on that day. (*Id.* at ¶ 85.) Earlier in the day, however, from 1:30 p.m. to 3:46 p.m., Grimes accessed hundreds of confidential and proprietary Open Text

---

[2] In its subsequently filed Emergency Renewed Motion for Leave to Conduct Limited Expedited Discovery, Open Text stated that Grimes' copying of company files began on March 6, 2017, only three days after his March 3 job interview with Nuxeo CEO Eric Barroca. (ECF No. 32 at 3.) *See also* ECF No. 41 at 11-12.

4

files.  (*Id.* at ¶ 88.)  Among the files which Grimes accessed were Open Text's "Process Play" and "Sales Play" files.  (*Id.*)  These files, Open Text alleges, contain its most closely-held consulting and sales proposals and are a core part of Open Text's sales and business strategy.  (*Id.* at ¶¶ 37-46.)  These proposals are developed through extensive labor on the part of Open Text personnel, taking four to fourteen months to complete before presentation to the prospective clients.  (*Id.* at ¶ 46.)  The sales and consulting packages sold by Open Text can generate tens of millions of dollars in revenue.  (*Id.*)

Having already accessed hundreds of sensitive and confidential files on March 20, Grimes against accessed hundreds more files, including nearly 200 unpublished Process Play files and 400 published Process Play files, on his last day of work, March 31, 2017.  (ECF No. 1 at ¶¶ 92, 94.)  This behavior was a significant deviation from his ordinary course of work at Open Text; during the five months prior to his resignation, Grimes "had accessed only 13 published Process Play files and only 3 unpublished Process Play files."  (*Id.* at ¶ 93.)  Plaintiff alleges that Grimes had "no legitimate business reason" to access such a substantial number of files during the last eleven days of his employment with Open Text.  (*Id.* at ¶ 95.)

Open Text alleges that Grimes began working for a significant competitor, Nuxeo Corporation, almost immediately after his departure from Open Text.  (ECF No. 1 at ¶¶ 103-114.)  At the time of the Complaint, Grimes' LinkedIn profile stated that he is employed as Nuxeo's "Vice President, Global Sales Engineering."  (*Id.* at ¶ 103.)  As early as April 10, 2017, plaintiff alleges, Grimes and Nuxeo contacted Brian Burke, a Principal Solutions Consultant at Open Text in order to entice Burke to leave Open Text for Nuxeo.  (*Id.* at ¶ 106; ECF No. 9-3.)  Grimes also participated in Nuxeo's efforts to recruit several other

5

Open Text employees who subsequently joined Nuxeo: Matt Corodimas, Selim Hakimi, Jaspreet Lamba, and Neil Grant.[3] (ECF No. 1 at ¶ 116.) The Complaint alleges that Hakimi, like Grimes, had signed a confidentiality and non-solicitation agreement with Open Text in 2004. (*Id.* at ¶ 118.) Among the clients on whose portfolios Hakimi had worked at Open Text was the hotel company Marriott Corporation. (*Id.* at ¶ 130.)

On April 20, 2017, Open Text sent letters to Grimes, Grant, Hakimi, Lamba, and Corodimas reminding them of their confidentiality and other post-employment obligations. (ECF No. 1 at ¶ 153; ECF No. 1-5.) That same day, plaintiff sent a letter to Nuxeo advising it of the post-employment obligations of the former Open Text employees. (*Id.* at ¶ 154.) Open Text sent follow-up letters to the former employees on April 27, 2017. (*Id.* at ¶ 155.)

By letter dated May 5, 2017, counsel for Nuxeo responded to Open Text's inquiries. (ECF No. 9-5.) In this letter, counsel stated that:

> "To the extent any files were downloaded, while [Grimes] was still working with OpenText, they were placed on his OpenText laptop, which he surrendered when he left and which OpenText has in its possession. He also copied them to a thumb drive, which he has destroyed."

(*Id.* at 3.) Counsel for Nuxeo further advised Open Text that "[i]f you desire to communicate further on this matter, please contact me, not [Grant, Lamba, Corodimas, Grimes, and Hakimi] or Nuxeo." (*Id.*)

---

[3] Of these individuals, only Grimes is a defendant in the instant case. This Court notes that a separate action has been filed against Hakimi and Nuxeo in the United States District Court for the District of New Jersey. *Open Text Corp. v. Hakimi, et al.*, No. SRC-17-3196. By Margin Order dated May 15, 2017, Judge Stanley Chesler of that Court approved the parties' stipulation and entered a stay in the *Hakimi* matter in light of these proceedings in the District of Maryland.
 An additional action against Nuxeo and a co-defendant, Steve King, has been filed in the United States District Court for the Northern District of California. *Open Text Corp. v. Nuxeo Corporation, et al.*, No. LB-17-3248. King's involvement in the events alleged in the instant case is unclear.

As noted, Open Text filed its Complaint in this Court on May 5, 2017. (ECF No. 1.) On May 8, Open Text filed a Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction ("Motion for TRO/PI") (ECF Nos. 8, 9) and a Motion for Leave to Conduct Limited Expedited Discovery (ECF No. 10).[4] Having reviewed the Complaint and plaintiff's Motions, this Court conducted a teleconference on May 10, 2017 with counsel for Open Text and for Nuxeo.[5] During the teleconference, this Court scheduled a hearing on plaintiff's Motion for TRO hearing for the following day, May 11, 2017.[6]

## II. The May 11, 2017 Motions Hearing

On May 11, 2017, this Court conducted a hearing on plaintiff's Motions for TRO/PI (ECF No. 8) and for Leave to Conduct Limited Expedited Discovery (ECF No. 10). (ECF Nos. 19, 23.) During the initial hearing, this Court expressed serious concerns about the allegations of illegal copying of Open Text's trade secrets and encouraged the parties to reach an agreement to take measures to preserve the status quo in this case, including the sequestration of all Open Text materials in Grimes' and Nuxeo's possession.[7] In addition,

---

[4] Along with its Complaint, Open Text filed a Motion for Leave to File Excess Pages *Instanter* (ECF No. 7.) This Motion was GRANTED by margin order dated May 10, 2017. (ECF No. 18.)

[5] While Nuxeo's May 5 letter led this Court to believe that counsel also represented Mr. Grimes, counsel indicated that Mr. Grimes was seeking to obtain his own attorney. Mr. Murphy appeared on behalf of Grimes the following day at the May 11, 2017 Motions Hearing.

[6] Among the relief requested in plaintiff's Motion for TRO/PI (ECF Nos. 8, 9) was an order barring Grimes and Nuxeo from participating in the "Nuxeo DAM Launch Party NYC," scheduled for May 10 in New York City on the fringe of the "DAM NY 2017 Conference," scheduled for May 11-12. (ECF No. 8 at ¶ 8(f).) Of particular concern to Open Text was Nuxeo's invitation to several Marriott employees—that is, current Open Text customers—and others to the "Launch Party." (ECF No. 1 at ¶ 137.) Open Text feared that Nuxeo and Grimes would attempt to solicit Open Text customers to Nuxeo at the Launch Party and the Conference. (ECF No. 8 at ¶ 5.) During the teleconference, counsel for Nuxeo represented that Mr. Grimes would not attend or participate in the conference.

[7] During the hearing, counsel for Nuxeo and Grimes stated that Grimes already had been placed on administrative leave from his new job at Nuxeo.

counsel for Nuxeo and Grimes argued that this Court is *forum non conveniens* on account of the FSC in the Grimes Agreement with Open Text, and, thus, that this Court should dismiss this action. (ECF No. 31-2.)

Over a several-hour recess, the parties conferred to draft an agreement to preserve the status quo with respect to the Open Text data downloaded by Grimes. This Court adopted that agreement, as set forth on the record and memorialized in this Court's Letter Order dated May 11, 2017. (ECF No. 20.) Of particular note was the Letter Order's provision that:

> "Mr. Grimes shall place in the possession and control of his counsel…any and all Open Text files in his possession, including e-mails, information stored in cloud services, mobile phones, computers, and external storage devices. This Order includes all Open Text information downloaded by Mr. Grimes in the last five months."

(ECF No. 20 at ¶ 1.) The Letter Order also denied without prejudice plaintiff's Motion for Leave to Conduct Limited Discovery, held in abeyance the Motion for a TRO/PI, and set a briefing schedule for defendants' anticipated Motions to Dismiss. (*Id.*)

### III. The June 7, 2017 Motions Hearing

On May 31, 2017, during the parties' briefing of defendants' Motion to Dismiss (ECF No. 31), plaintiff filed an Emergency Renewed Motion for Leave to Conduct Limited Expedited Discovery ("Renewed Discovery Motion"). (ECF No. 32.) In this Motion, Open Text stated that its internal investigation revealed that Grimes' wrongful copying began even earlier than previously alleged, and further asserted that Grimes himself was not fully forthcoming with his counsel with respect to sequestration of the Open Text materials. (*Id.* at 2-3, 6-7.) Open Text also asserted that it had already lost customers and suffered damages

8

as a result of Grimes' conduct. (*Id.* at 8-10.) By letters dated June 1, defendants disputed Open Text's allegations and sought to downplay the alleged "emergency need" for expedited discovery. (ECF Nos. 33, 34.)

This Court conducted a hearing on plaintiff's Renewed Discovery Motion (ECF No. 32) and defendants' joint response thereto (ECF No. 37) on June 7, 2017.[8] (ECF Nos. 39, 43.) During the hearing, the parties proposed that this Court appoint an expert forensic computer examiner pursuant to Federal Rule of Evidence 706 to "to determine whether any Open Text files downloaded by defendant Grimes after March 6, 2017 were subsequently transferred and/or copied to other devices/systems." (ECF No. 40.) This independent examination would help to guarantee compliance with this Court's May 12 Letter Order and ensure the timely and economical progress of this case. *See* ECF No. 43 at 37:21-38:10.

This Court's June 7, 2017 Letter Order (ECF No. 40) set forth certain parameters for the court-appointed expert's examination, and, consistent with that letter, the parties proposed three experts for this Court's consideration (ECF No. 42). By Order dated June 9, 2017 and pursuant to Federal Rule of Evidence 706, this Court appointed Daniel Roffman of FTI Consulting as expert forensic computer examiner in this case. (ECF No. 44.)

Consistent with this Court's June 7 and June 9, 2017 Orders (ECF Nos. 40, 44), Mr. Roffman submitted his Initial Report to the undersigned's chambers by email dated June 16, 2017. Having reviewed the report, this Court subsequently conducted a telephone

---

[8] Per this Court's Order, Mr. Grimes and Nuxeo in-house counsel David Woolston attended the hearing in person. (ECF No. 36.)

conference with the parties on June 22, 2017 to discuss Mr. Roffman's findings, and distributed copies of the Initial Report to them, as required by Rule 706. (ECF No. 46.)[9]

## STANDARD OF REVIEW

Defendants have framed their Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, but state as a basis for dismissal the common law doctrine of *forum non conveniens*, pointing to the forum selection clause ("FSC") in the Grimes Agreement. (ECF No. 31.) In *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568 (2013), the Supreme Court did not expressly reject the use of Rule 12(b)(6) to invoke the *forum non conveniens* doctrine, but did state that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is **through the doctrine of** *forum non conveniens*." *Id.* at 580-81 (emphasis added). Following *Atlantic Marine*, Judge Grimm of this Court explained that "[i]f a forum-selection clause grants jurisdiction to a foreign forum, the appropriate way to enforce it is through the doctrine of *forum non conveniens*." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, PWG-14-3551, 2016 WL 429987, at *7 (D. Md. Feb. 4, 2016). *See also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 775, n. 11 (5th Cir. 2016); *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48, n. 3 (1st Cir. 2014).[10] As the doctrine of *forum non conveniens* by itself provides an

---

[9] The report has been docketed under seal pending further Order of this Court. (ECF No. 47.) As Mr. Roffman's findings are only tangential to the resolution of the pending Motion to Dismiss, they are not discussed further herein.

[10] The United States Court of Appeals for the First Circuit in *Claudio-De Leon* excused the appellant's failure to frame the motion under § 1404 or *forum non conveniens* because *Atlantic Marine* did not expressly reject the use of Rule 12(b)(6). *Claudio-De Leon*, 775 F.3d at 46, n. 3. However, in *Weber*, the United States Court of Appeals for the Fifth Circuit cast doubt on the Rule 12(b)(6) approach, stating that, "[t]he First Circuit apparently has determined that its previous approach therefore remains valid **despite** *Atlantic Marine***'s**

"appropriate enforcement mechanism" for an FSC which opts for a foreign tribunal, there is no need to frame Defendants' Motion within the added structure of Rule 12(b)(6). Thus, this Court construes Defendants' Motion to Dismiss under the doctrine of *forum non conveniens* alone—not Rule 12(b)(6).[11]

The Supreme Court explained in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.* that the common-law doctrine of *forum non conveniens* provides federal courts with the discretion to dismiss a case "when an alternative forum has jurisdiction to hear [the] case, and … trial in the chosen forum would establish … oppressiveness and vexation to a defendant … out of all proportion to plaintiff's convenience…" *Sinochem*, 549 U.S. 422, 429, 127 S. Ct. 1184, 1190 (2007) (internal citations omitted). *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252 (1981). "The common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Id.* at 430 (internal citations omitted). *See also* 14D Wright, Miller, & Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9–10 (3d ed. 2007).

---

**exhortations in favor of the FNC analysis**." *Weber*, 811 F.3d at 768, n. 11) (emphasis added). The United States Court of Appeals for the Fourth Circuit has not had occasion to opine on this subtle procedural point.

[11] This Court notes that the *Rihani*, *Acciai,* and *Podesta* opinions cited by defendants did not involve the doctrine of *forum non conveniens*, but only FSCs. *See id.* (citing *Rihani v. Team Exp. Distrib., LLC*, 711 F. Supp. 2d 557, 558 (D. Md. 2010); *Acciai Speciali Terni USA, Inc. v. M/V BERANE*, 181 F. Supp. 2d 458, 465 (D. Md. 2002); *Podesta v. Hanzel*, No. 15-3372, 2017 WL 1135696, at *2-3 (3d Cir. Mar. 27, 2017)). In addition, the *Liberty Woods* opinion, currently on appeal before the United States Court of Appeals for the Third Circuit, relies on pre-*Atlantic Marine* authority. *Liberty Woods Int'l, Inc. v. Motor Vessel Ocean Quartz*, 219 F. Supp. 3d 494, 497 (D.N.J. 2016).

# DISCUSSION

## I. The Forum Selection Clause in the Grimes Agreement Is Solely For the Benefit of Open Text; Open Text Has Waived Its Rights Under that Clause

Open Text argues that because the forum selection clause ("FSC") in the Grimes Agreement was drafted solely for its own benefit, both Maryland and federal law allow Open Text to waive that clause. (ECF No. 41 at 13-15.) *See Grant v. Kahn*, 198 Md. App. 421, 430, 18 A.3d 91, 97 (2011) ("[I]t is elementary that either party to a contract may waive any of the provisions made for his benefit.") (citing *Twining v. Nat'l Mortg. Corp.,* 268 Md. 549, 555, 302 A.2d 604 (1973) and *Citadel Equity Fund Ltd. v. Aquila, Inc.,* 371 F.Supp.2d 510, 520 (S.D.N.Y. 2005)). Open Text points to the specific language of the clause—"I hereby irrevocably attorn to the jurisdiction of the courts of the Province of Ontario"—as evidence of the non-mutuality of the benefit of this promise. (*Id.* at 14) (quoting Grimes Agreement § V(D).)

In their Reply, defendants argue that because the Grimes Agreement—and the FSC contained therein—is subject to Ontario law, plaintiff's reliance on Maryland and federal law is mistaken. (ECF No. 45 at 9-10.) That is, only if *Ontario law* would permit plaintiff to waive the FSC, defendants argue, might this defense be viable. While defendants fault plaintiff for not citing to Ontario or Canadian authority, they, notably, do not suggest that Canadian courts would reach a different result than Maryland or United States courts on this question.[12] In addition, defendants dispute plaintiff's assertion that the FSC was drafted for Open Text's sole benefit. (*Id.*)

---

[12] Although both parties have offered submissions on Canadian and Ontario trade secrets law, they have not cited authority pertinent to the issue of unilateral waiver of FSCs under Ontario law.

It appears that similar principles govern Ontario and Canadian courts' treatment of waiver of contract provisions which benefit only one party to the agreement. *See, e.g., Turney v. Zhilka*, 18 D.L.R.2d 447, 450 (S.C. 1959); *Beauchamp v. Beauchamp*, 32 D.L.R.3d 693 (Ont. C.A. 1973); *Barnett v. Harrison*, 57 D.L.R.3d 225 (S.C. 1975); *Romaniuk v. Nelson*, 4 D.L.R.4th 51 (Alta. Q.B. 1983). *But see San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1310 (9th Cir. 1997) (declining to rule on Canadian law waiver argument where independent statutory basis to avoid contractual provision present). Thus, defendants' choice-of-law argument is of little import in assessing whether Open Text waived the FSC.

Turning to the merits, it is readily apparent from the allegations in the Complaint that the sole beneficiary of the FSC is Open Text. It is a Canadian corporation headquartered in Waterloo, Ontario. Grimes, by contrast, worked for Open Text in Maryland and committed the alleged wrongful acts in Maryland. The mere fact that *Grimes agreed* to "irrevocably attorn to the jurisdiction of the courts of the Province of Ontario," did not foreclose *Open Text's ability* to file suit in Grimes' home state. "[I]t is well settled that a contracting party may unilaterally waive a provision of the contract…which has been placed in the contract for that party's benefit." 13 Williston on Contracts § 39:24 (4th ed.). *See Peoples Bank v. Carter*, 132 S.W.3d 302, 307 (Mo. Ct. App. 2004); *JetBlue Airways Corp. v. Stephenson*, 88 A.D.3d 567, 574, 931 N.Y.S.2d 284, 289 (2011). *See also Stewart v. Griffith*, 217 U.S. 323, 329, 30 S. Ct. 528, 529 (1910) (Holmes, J.) ("The condition plainly is for the benefit of the vendor, and hardly less plainly for his benefit alone… This being so, the word 'void' means voidable at the vendor's election, and the condition may be insisted upon or waived, at his choice.").

Importantly, Open Text's ability to waive the FSC contained in the Grimes Agreement derives from the language of the Grimes Agreement itself. That is, while this Court has interpreted agreements which expressly bind *each party* to a specified forum, the specific language of the Grimes Agreement only includes a promise *by Grimes*: "**I hereby irrevocably attorn** to the jurisdiction of the courts of the Province of Ontario."[13] (Grimes Agreement § V(D)) (emphasis added.) This case is thus distinguishable from *Imperium Ins. Co. v. Allied Ins. Brokers, Inc.*, where, as in many FSCs, the obligation binds "each party":

> "**Each party**...stipulates that the State and Federal courts located in the County of New York, State of New York shall have in personam jurisdiction and venue **over each of them** for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Agreement."

*Id.*, CCB-12-1373, 2012 WL 4103889, at *1 (D. Md. Sept. 17, 2012) (emphasis added).

Finally, this Court rejects Grimes' purported interest in the predictability that the contract would be litigated in Canada given that he is not present there, has no interests there, and committed the alleged wrongful acts in Maryland. (ECF No. 45 at 10.) Although the interest in predictability is critical to many commercial contracts, it is of lesser importance when the aggrieved party subjects itself to the jurisdiction of the courts *where the defendant resides* and where, in view of the tort and statutory claims alleged, the wrongful acts occurred in the jurisdiction where the suit is filed.[14] *See Carter*, 132 S.W.3d at 307 ("[I]t could be argued that [defendant] actually *benefited* from [plaintiff's] decision to waive the forum

---

[13] Indeed, this syntax is consistent with nearly every other paragraph of the Grimes Agreement. *See id.* at preamble ("I understand and agree…; I have a responsibility…I irrevocably assign…"); § I ("I recognize and acknowledge…"); § II ("I agree that…"); § III ("I agree to return to the Company…"); § IV ("I represent and warrant…; I will promptly disclose…").

[14] Similar reasoning underlines the forum defendant rule under 28 U.S.C. § 1441(b), which prohibits removal to federal court by a defendant who is a citizen of the state where the action is filed. *See generally Robertson v. Iuliano*, RDB 10-1319, 2011 WL 453618, at *2 (D. Md. Feb. 4, 2011).

14

selection clause since [plaintiff] thereby allowed [defendant] to defend the suit in her home county, rather than forcing her to litigate…in the courts of another state."). This Court also rejects Grimes' purported interest in having Ontario courts interpret the Grimes Agreement, given that similar principles of contract law apply in both fora, not to mention the more than ample submissions on Ontario and Canadian law which both parties have attached to their briefs. *See* ECF No. 41-2; ECF No. 45-1.

Accordingly, as the FSC on which defendants base their Motion was solely for the benefit of Open Text, and as Open Text has elected to waive that provision, Defendants' Motion to Dismiss based on *forum non conveniens* must be DENIED.

## II. Even if the Forum Selection Clause Were Not Waived, Nuxeo is Not Party to the Grimes Agreement and Could Not Rely on that Clause to Avoid this Forum

Nuxeo is not party to the Grimes Agreement with Open Text. This fact is undisputed. (ECF No. 31-2.) *See* ECF No. 41 at 8; ECF No. 45 at 20. Nor does Nuxeo assert that it is a third-party beneficiary of the Agreement or a "closely related" party so as to entitle it to the rights and obligations of the FSC. *See Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente Gmbh*, 3:09-CV-347RM, 2009 WL 3675807, at *11 (N.D. Ind. Nov. 2, 2009). While Nuxeo argues that its' proffered consent to jurisdiction in Ontario distinguishes the posture of this case from *Buffet Crampon*, this argument does not cure its lack of standing on this issue. (ECF No. 31-1 at 31.) Thus, even if the FSC were not waived, plaintiff's claims against Nuxeo alone (Counts IV, VI, VII, VIII, and IX) would not be subject to dismissal on *forum non conveniens* grounds.

### III. Even if the Forum Selection Clause Were Not Waived, Eight of Open Text's Claims Would Be Outside the Scope of that Clause Because the Alleged Bulk Downloading of Open Text Files Was Not Related to Grimes' Employment

This Court applies a three-part test to determine whether an forum selection clause ("FSC") is enforceable. *Fangman v. Genuine Title, LLC*, RDB-14-0081, 2015 WL 8315704, at *13 (D. Md. Dec. 9, 2015). As this Court explained in *Fangman*:

> "First, this Court must determine whether the clause is mandatory. If so, the clause is presumptively enforceable. Second, this Court must identify whether the specific claims in this case fall within the scope of the clause. If they do fall within the clause's scope, the clause presumptively bars their adjudication outside of the designated forum. Third, this Court must determine whether the party opposing enforcement has rebutted the presumption of enforceability by proving that enforcement would be unreasonable."

*Id.*, 2015 WL 8315704, at *13 (internal citations omitted).

In the instant case, there is no dispute that the FSC in the Grimes Agreement is mandatory. (ECF No. 41 at 19.) However, Open Text argues that eight of the ten counts set forth in the Complaint "exist independently of the Agreement and thus fall outside of the scope of the clause." (*Id.*) Specifically, Open Text asserts that only its Breach of Contract (Count I) and Tortious Interference with Contract (Count VIII) claims fall within the scope of the Grimes Agreement's FSC. (*Id.*) On the other hand, defendants argue that "[b]ecause each claim arises out of or relates to the Grimes Contract or obligations and rights thereunder, Plaintiff's contract, statutory and tort claims fall within the purview of the mandatory forum selection clause in the [Grimes Agreement]." (ECF No. 31-1 at 16-17) (citing *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 318 (D. Md. 2007); *Varsity Gold, Inc. v. Lunenfeld*, CCB-08-550, 2008 WL 5243517, at *3 (D. Md. Dec. 12, 2008)).

Although defendants properly note that an FSC may encompass both contractual and non-contract-based claims, the wrongful acts Grimes is alleged to have committed were outside the scope of his employment and, thus, not "relating to" the Grimes Agreement. (Grimes Agreement § V(D).) The core allegations set forth in the Complaint relate to Grimes' bulk downloading of Open Text's confidential and proprietary files. While Grimes had access to these files on account of his employment at Open Text, his bulk copying of these materials to his personal hard drives did not serve any conceivable business interest of Open Text.[15] This conclusion is supported by the fact that Grimes' alleged activities on March 20 and 31 deviated significantly from his activities for months preceding his departure from Open Text:

> "Grimes' access to [nearly 200 unpublished] Process Plays was especially unusual and troubling because Grimes rarely accessed these files in the ordinary course of his work at Open Text. **In the entire five months preceding the date he resigned, he had only accessed 13 published Process Play files and only 3 unpublished Process Play files.**"

(ECF No. 1 at ¶¶ 92-93.) Nevertheless, "**Grimes accessed nearly 400 Process Play library files on the date of his resignation and his last day of work.**" (*Id.* at 94.) This significant deviation explains Open Text's repeated allegation that "[t]here is no legitimate business reason" for Grimes to have accessed so many confidential documents. (*Id.* at ¶¶ 95, 172, 175, 186, 193, 196, 207.) Thus, to the extent that Open Text's claims are based on Grimes' bulk downloading of its trade secrets, these activities fall outside the scope of his employment and the Grimes Agreement, and are not subject to the FSC contained therein.

---

[15] An analogy illustrates this point. While a bank teller might have access to the bank's vault by virtue of his employment, the teller's decision to take all of the vault's contents home with him would not—one must assume—be considered part of his employment. That this case involves bits, and not bullion, matters not.

17

Based on the foregoing, even if Open Text had not waived the FSC, only Open Text's Breach of Contract (Count I) and Tortious Interference (Count VIII) claims would be dismissed on *forum non conveniens* grounds. Four of the remaining counts are for alleged trade secrets violations (Counts III, IV, V, and VI). These counts plainly would not be dismissed. Nor would the Tortious Interference with Prospective Economic Advantage (Count IX) claim be dismissed, as it is charged against Nuxeo and, moreover, is outside the scope of the Grimes Agreement. Finally, the Breach of Fiduciary Duty (Count II) and Aiding and Abetting Breach of Fiduciary Duty (Count VIII) claims would not be dismissed, as these counts are premised on Grimes' breach of his duty of loyalty to Open Text and Nuxeo's aiding of that breach. This duty existed independent of the Grimes Agreement, and nothing in the text of that agreement eliminates Grimes' common law duty of loyalty. *See Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 40, 382 A.2d 564, 569 (1978). *See also Waymo LLC v. Uber Techs., Inc.*, WHA-17-939, 2017 WL 1957010, at *3 (N.D. Cal. May 11, 2017).

In sum, while all ten counts in the Complaint shall survive Defendants' Motion based on Open Text's waiver of the FSC in the Grimes Agreement, this Court notes that even if the FSC were not waived, eight of the ten counts would still proceed to discovery.[16]

## CONCLUSION

For the reasons stated above, defendants Steven Grimes and Nuxeo Corporation's Motion to Dismiss the Complaint or, in the Alternative, to Stay Any Claim Not Dismissed (ECF No. 31) is DENIED.

---

[16] As all counts alleged in the Complaint survive Defendants' Motion, the arguments raised by defendants in support of a stay are unwarranted.

Plaintiff's pending Motion for Temporary Restraining Order or, in the Alternative, for Preliminary Injunction ("Motion for TRO/PI") (ECF No. 8) will be addressed promptly, and a Scheduling Order will be issued in this case.

A separate Order follows.

Dated: June 26, 2017                                  _____/s/_____
                                                      Richard D. Bennett
                                                      United States District Judge